**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE MALDONADO, | 1:08-CV-01308 LJO GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| J. HARTLEY, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections serving an indeterminate sentence of twenty-five years to life for his 1981 conviction in the Los Angeles County Superior Court for first degree murder with a deadly weapon enhancement. (Pet. at 2.)

On May 31, 2006, a parole suitability hearing was held before the California Board of Parole Hearings ("Board") to determine Petitioner's eligibility for parole. (HT[1] at 1.) Petitioner attended the hearing and was represented by an attorney. (HT at 1-2.) At the conclusion of the hearing, the Board denied parole and deferred rehearing for two years. (HT at 81.)

On December 15, 2006, Petitioner filed a petition for writ of habeas corpus in the Los

---

[1]"HT" refers to the hearing transcript that is contained in Exhibit 2 of Respondent's Answer.

1

Angeles County Superior Court. See Answer, Exhibit 2. On August 21, 2007, the petition was denied in a reasoned decision. See Answer, Exhibit 3. Petitioner then filed a habeas petition in the California Court of Appeals, Second Appellate District. See Answer, Exhibit 4. The petition was summarily denied on January 24, 2008, with citation to In re Dannenberg, 34 Cal.4th 1061, 1070-71 (2005) and In re Rosenkrantz, 29 Cal.4th 616 (2002). See Answer, Exhibit 5. On February 21, 2008, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. See Answer, Exhibit 6. On August 13, 2008, the petition was summarily denied. See Answer, Exhibit 7.

On August 28, 2008, Petitioner filed the instant federal petition for writ of habeas corpus. The petition challenges the 2006 decision of the Board of Parole Hearings denying parole and the 2005 decision of the Governor denying parole. On January 12, 2009, Respondent moved to dismiss all claims challenging the Governor's 2005 decision as untimely. On April 24, 2009, the District Court adopted the undersigned's Findings and Recommendation and granted Respondent's motion to dismiss. On June 22, 2009, Respondent filed an answer to the petition with respect to those claims concerning the 2006 parole board decision. Petitioner filed a traverse to Respondent's answer on October 30, 2009.

## FACTUAL BACKGROUND[2]

On April 23, 1981, at Lincoln Park at the corner of Maddito and Workman Avenues in Los Angeles, Petitioner, known as "Torito," along with other members of the "Clover Street Gang," were visiting when the victim, Johnny Leyva, age 15 years, drove up on his motorcycle. After some discussion, Mr. Leyva agreed to drive one of the other individuals that was there to the liquor store to purchase some beer. While they were gone, Petitioner was advised by someone that Mr. Leyva had informed or given testimony against a Clover Street Gang member. Petitioner advised the person standing there that he would "take care of that." Petitioner asked his co-defendant, Leonard Aguilar, for his knife. When Mr. Leyva returned from the liquor store and was standing in the street, Petitioner walked up to him and put his arm across his shoulder and

---

[2]The information is derived from the factual summary set forth in the parole hearing proceedings. (HT 8-9.)

2

stabbed Mr. Leyva in the neck and chest area. Mr. Leyva ran a short distance from the scene, collapsed and died. Co-defendant Aguilar was interviewed by the probation officer, declined to give any information regarding the activities of Petitioner, and in fact, took the full blame for the stabbing himself, indicating that he had committed the offense with his own knife. Witnesses to the act, however, when interviewed, unanimously agreed that Petitioner had been the individual who inflicted the fatal wounds to the victim.

## DISCUSSION

I.    <u>Standard of Review</u>

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* <u>Drinkard v. Johnson</u>, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. <u>Sass v. California Board of Prison Terms</u>, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* <u>White v. Lambert</u>, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an

1  unreasonable application of, clearly established Federal law, as determined by the Supreme Court
2  of the United States" or "resulted in a decision that was based on an unreasonable determination
3  of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.
4  § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

5  As a threshold matter, this Court must "first decide what constitutes 'clearly established
6  Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
7  *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this
8  Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as
9  of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other
10 words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or
11 principles set forth by the Supreme Court at the time the state court renders its decision." Id.

12 Finally, this Court must consider whether the state court's decision was "contrary to, or
13 involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at
14 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may
15 grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]
16 Court on a question of law or if the state court decides a case differently than [the] Court has on a
17 set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S.
18 at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the
19 state court identifies the correct governing legal principle from [the] Court's decisions but
20 unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at
21 413.

22 "[A] federal court may not issue the writ simply because the court concludes in its
23 independent judgment that the relevant state court decision applied clearly established federal
24 law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.
25 A federal habeas court making the "unreasonable application" inquiry should ask whether the
26 state court's application of clearly established federal law was "objectively unreasonable." Id. at
27 409.

28 Petitioner has the burden of establishing that the decision of the state court is contrary to

4

or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

In this case, because the California Supreme Court summarily denied the habeas petition, this Court must "look through" that decision to the decisions below. Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991).

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only procedural process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id.

As to these procedural protections, Petitioner was provided with all that is required. He was given advanced written notice of the hearing, an opportunity to submit materials for the Board's consideration, an opportunity to be heard, representation by an attorney, and a written decision explaining the reasons parole was denied.

1    "In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not
2  comport with 'the minimum requirements of procedural due process,' unless the findings of the
3  prison disciplinary board are supported by *some evidence* in the record.'  472 U.S. 445, 454
4  (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)."  Sass v. California Board of
5  Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (italics added); Irons v. Carey, 505 F.3d 846,
6  851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s]
7  clearly established that a parole board's decision deprives a prisoner of due process with respect
8  to this interest if the board's decision is not supported by 'some evidence in the record,' or is
9  'otherwise arbitrary.'").  In assessing "whether a state parole board's suitability determination
10 was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and
11 regulations governing parole suitability determinations in the relevant state."  Irons, 505 F.3d at
12 851.  Here, the Court must look to California law and review the record.  In reviewing the record
13 and determining whether the "some evidence" standard is met, the Court need not examine the
14 entire record, independently assess the credibility of witnesses, or re-weigh the evidence.  Sass,
15 461 F.3d at 1128.

16    Further, the California Supreme Court more recently stated:

> "[T]he relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after the commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude.

21 In re Lawrence, 44 Cal.4th 1181, 1221 (2008).  The nature of the commitment offense "does not
22 in and of itself provide some evidence of current dangerousness to the public unless the record
23 also establishes that something in the prisoner's pre- or post-incarceration history, or his or her
24 current demeanor and mental state, indicates that the implications regarding the prisoner's
25 dangerousness that derive from his or her commission of the commitment offense remain
26 probative to the statutory determination of a continuing threat to public safety."  Id. at 1214.
27    In denying parole in this case, the Board based its decision on the following factors: 1)
28 The nature and gravity of the commitment offense; 2) Previous record of escalating violent and

6

1   assaultive behavior and criminal conduct; and 3) Institutional behavior. (HT at 79-85.)

2      First, the Board determined that Petitioner committed the offense in an especially
heinous, atrocious or cruel manner.[3] Specifically, the Board found that the offense was carried out in a calculated and dispassionate manner pursuant to § 2402(c)(1)(B). The superior court determined that sufficient evidence supported this finding given that Petitioner asked to use the murder weapon and stated he would "take care" of the victim when he returned from the store. See Answer, Exhibit 3. Petitioner then waited for the victim to return, and when he did, Petitioner calmly walked up to him and stabbed him in the neck and chest, killing him. Id. In light of the facts of the offense, the superior court's determination that some evidence supported the Board's finding that the offense was especially heinous, atrocious or cruel as to be a sufficient basis to deny parole was not unreasonable.

   The Board next found Petitioner's prior history of escalating, criminally violent and assaultive conduct demonstrated a danger to the public if released. 15 Cal. Code Regs. § 2402(c)(2). Petitioner had been arrested as a juvenile for auto theft and was declared a ward of the court. (HT 22.) He was later arrested for tampering and taking a vehicle. (HT 22.) He was then arrested for possession of a billy club and placed on probation. (HT 22.) Once again, Petitioner was arrested for auto theft. Thereafter, Petitioner was arrested and found guilty of one count of robbery and two counts of assault with a deadly weapon. (HT 23.) During that incident, Petitioner got into an altercation with his sister and sister-in-law, struck and kicked his sister-in-law, seized his two-month old baby, ran into a street, chanced upon a passing vehicle, engaged the driver of that vehicle in an altercation, placed the two-month old baby on the hood of the

---

[3] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
   (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
   (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
   (C) The victim was abused, defiled or mutilated during or after the offense.
   (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
   (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

1  vehicle, and then attacked the driver by stabbing him in the chest and hand. (HT 23-25.)
2  Petitioner then engaged in a lengthy and violent struggle with a nearby police officer. (HT 24.)
3  The superior court determined that some evidence supported the Board's finding that this factor
4  supported a determination of unsuitability. See Answer, Exhibit 3. In light of Petitioner's violent
5  past, the state court determination was not unreasonable.

6        Finally, the Board determined Petitioner's extensive negative institutional behavior was
7  an indicator of unsuitability pursuant to 15 Cal. Code Regs. § 2402(c)(6). Petitioner continued
8  his gang activity after he was incarcerated. (HT 12.)  He was considered a high-ranking member
9  of his gang, attaining the rank of "shot-caller." (HT 12.) This gang activity continued for
10 approximately 12-13 years after incarceration. (HT 12.) Petitioner also had sustained ten "CDC-
11 115" serious disciplinary violations, the last one being three years before for excessive contact
12 with a visitor. (HT 32.) The state court found some evidence supported a finding of unsuitability
13 on this factor when considered along with the two other factors. The Court's finds this
14 determination is also not unreasonable.

15       The Board then considered the positive factors favoring parole release. The Board noted
16 the psychological report was supportive, although it did not take into consideration the most
17 recent disciplinary violation. (HT 82.) The Board noted Petitioner had acceptable parole plans.
18 (HT 82.)  The Board commended Petitioner for his completion of a vocation, his nine-year
19 participation in Alcoholics Anonymous, and his completion of self-help programming in anger
20 management and parenting. (HT at 80-81.) Nevertheless, the Board concluded Petitioner
21 remained an unreasonable risk of danger to the public in light of the graveness of his crime, his
22 past criminal behavior, and his more recent misconduct in prison. The state court finding that
23 some evidence supported this determination was not unreasonable.

24       Petitioner claims the parole board continues to rely on unchanging factors in violation of
25 his constitutional rights. While it is true that in Biggs v. Terhune, 334 F.3d 910, 916-17 (9th
26 Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging
27 factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the
28 rehabilitative goals espoused by the prison system and could result in a due process violation,"

8

1  this is not the situation here. As discussed above, the parole board did not rely solely on the
2  underlying offense. The board also relied on Petitioner's escalating criminal and violent behavior
3  which extended well into his imprisonment and included continued gang activity. These
4  additional facts are not immutable and stale. Petitioner sustained a serious rules violation only
5  three years prior to the hearing. Therefore, the concerns present in Biggs are not at issue here.

6  In light of the above, it cannot be said that the state court resolution of Petitioner's claims
7  "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly
8  established Federal law, as determined by the Supreme Court of the United States" or "resulted
9  in a decision that was based on an unreasonable determination of the facts in light of the evidence
10 presented in the State Court proceeding." 28 U.S.C. § 2254(d).

## RECOMMENDATION

12 Based on the foregoing, it is HEREBY RECOMMENDED that:
13 1. The petition for writ of habeas corpus be DENIED; and
14 2. Judgment be entered in favor of Respondent.

15 This Findings and Recommendations is submitted to the assigned United States District
16 Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of
17 the Local Rules of Practice for the United States District Court, Eastern District of California.
18 Within thirty (30) days after being served with a copy, any party may file written objections with
19 the court and serve a copy on all parties. Such a document should be captioned "Objections to
20 Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served
21 and filed within ten (10) court days (plus three days if served by mail) after service of the
22 objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §
23 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time
24 may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th
25 Cir. 1991).

27 IT IS SO ORDERED.
28 Dated:   **January 24, 2010**                    **/s/ Gary S. Austin**

UNITED STATES MAGISTRATE JUDGE